**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 5 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RICHARD K. HATHAWAY,

Defendant - Appellant.

No. 02-3050

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 01-CR-20096-CM)**

Michael Lewis Harris, Assistant Federal Public Defender, Kansas City, Kansas, for Defendant-Appellant.

Nancy L. Caplinger, Assistant United States Attorney (Eric F. Melgren, United States Attorney, with her on the brief), Topeka, Kansas, for Plaintiff-Appellee.

Before **KELLY**, Circuit Judge, **BRORBY**, Senior Circuit Judge and **OBERDORFER**[*], District Judge.

**KELLY**, Circuit Judge.

---

[*]  The Honorable Louis F. Oberdorfer, Senior United States District Judge for the District of Columbia, sitting by designation.

Defendant-Appellant Richard K. Hathaway was convicted by a jury of a single count of forcibly assaulting a federal officer in violation of 18 U.S.C. § 111(a). He was sentenced to two years of probation, including four months of home confinement, and was ordered to pay a $1,000 fine.

On appeal, Mr. Hathaway asserts that the indictment only charged him with a misdemeanor violation of § 111 involving simple assault. Relying on Jones v. United States, 526 U.S. 227 (1999), he argues that since both the indictment and the jury instructions failed to distinguish between simple and non-simple assault-- and thus charged only a misdemeanor violation--he could not in fact be convicted of a felony. As noted at oral argument, Mr. Hathaway does not seek to have his conviction set aside. Instead, he asks this court to order all records to reflect that he was convicted only of a misdemeanor violation of § 111. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and remand to the district court for compliance with the order contained herein that all of Mr. Hathaway's records be corrected to reflect his conviction for a misdemeanor violation of § 111(a).

Background

On June 13, 2002, Special Agent Bruce McKimens of the Social Security Administration Office of Inspector General ("SSA Agent") and Postal Inspector Jane Lutz of the United States Postal Inspection Service arrived at Mr.

- 2 -

Hathaway's residence seeking to interview him in connection with an ongoing investigation involving his former wife. After parking in Mr. Hathaway's driveway, the agents rang the doorbell, and upon receiving no answer, the SSA Agent looked into the window next to the front door to check for signs of occupancy. Seeing none, the agents went next door to interview a neighbor.

After interviewing the neighbor, the agents noticed Mr. Hathaway's vehicle parked behind their vehicle and they spotted Mr. Hathaway between his home and the neighbor's home. The SSA Agent addressed Mr. Hathaway, who began yelling at the agents, asking why they were looking in his window. The SSA Agent identified himself as a federal agent with the Social Security Administration. When the agents did not leave after he requested that they do so, Mr. Hathaway admittedly pushed the SSA Agent in the chest and grabbed him by his tie, thereby choking him, telling him "I don't care who you are, you little twirp." III R. at 35, 199. The agents left after Mr. Hathaway complied with their request to move his vehicle. The SSA Agent suffered bruising but did not require medical attention.

Mr. Hathaway was subsequently charged in a one count indictment which read as follows:

The Grand Jury charges:
Count 1
On or about June 13, 2001, in the District of Kansas, the defendant,
RICHARD K. HATHAWAY,

did knowingly and intentionally forcibly assault, resist, oppose, impeded [sic], intimidate, and interfere with Social Security Administration Special Agent, Bruce McKimens, while he was engaged in and on account of the performance of his official duties, in violation of Title 18, United States Code, Section 111.

A TRUE BILL.

I R. Doc. 1 at 1. Immediately following this text, the indictment was signed and dated by the foreman. Id. On a separate page appended to the indictment at some unknown time, the following language appeared: "PENALTIES: Count 1: Imprisonment [not more than] 3 years; $250,000.00 Fine; [not more than] 1 year [supervised release]; Special Assessment $100.00." Id. at 3. The indictment included no factual details of Mr. Hathaway's conduct.

During the jury trial, the court instructed the jurors that the indictment charged Mr. Hathaway with a violation of § 111(a)(1), which it quoted as follows:

(a) Whoever – (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties . . . shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and in all other cases, be fined under this title or imprisoned not more than three years, or both.

I R. Doc. 24 at 17. The court further instructed the jurors that for the government to sustain its burden of proof, it must prove the following essential elements beyond a reasonable doubt:

FIRST:     defendant intentionally used unlawful force in assaulting, intimidating or interfering with Bruce

- 4 -

McKimens

SECOND: defendant did so while Bruce McKimens was engaged in, or on account of his official duties

THIRD: that this act occurred on or about the 13th day of June 2001 in the District of Kansas.

Id. at 18. Finally, the court instructed the jurors on the meaning of the phrase "forcibly assaults:"

> The term "forcibly assaults" means any deliberate and intentional attempt or threat to inflict physical injury upon another with force or strength when that attempt or threat is coupled with an apparent ability to do so. Although a "forcible assault" may be committed by a defendant without actually touching, striking, or doing bodily harm to another, the government must prove that the actions of the defendant, RICHARD K. HATHWAY, were of such a nature to put the person against whom they are directed in fear of immediate bodily harm. There is a use of force when one person intentionally wounds another, or when one person intentionally makes a display of force which reasonably causes a person to fear immediate bodily harm.

Id. at 20. Mr. Hathaway did not object at trial to the jury instructions and did not request a lesser included offense instruction. III R. at 225. The jury found Mr. Hathaway guilty "as charged in the Indictment." I R. Doc. 25.

The Presentence Report ("PSR") characterized Mr. Hathaway's conviction as a Class E felony in violation of § 111, with a maximum term of imprisonment of three years. IV R. at 1. Prior to sentencing, Mr. Hathaway objected to the classification of his conviction as a felony since, in his view, the indictment and the jury instructions charged only a misdemeanor violation of § 111 involving simple assault. I R. Doc. 27 at 1. In light of the Supreme Court's reasoning in

Jones, Mr. Hathaway argued that §111(a) essentially prohibits two different offenses with different required elements. Thus, conviction for non-simple assault under § 111(a) would be valid only if every element of that offense is properly charged in the indictment and then found to exist beyond a reasonable doubt by the jury. Because that did not happen here, Mr. Hathaway argued that he could only be validly sentenced for a misdemeanor violation of § 111.

Though the district court found Mr. Hathaway's arguments to be "intriguing" and "novel," it was unpersuaded, noting that Mr. Hathaway was put on notice by the indictment's reference to the applicable penalties that he was charged with a felony violation of § 111(a). II R. at 13. Accordingly, the court sentenced Mr. Hathaway on the basis of a felony conviction, imposing a sentence of two years of probation, including four months of home detention. Id. at 22, 26. Mr. Hathaway's actual sentence was below both the maximum statutory penalty of three years imprisonment for a felony conviction and the maximum statutory penalty of one year imprisonment for a misdemeanor conviction under § 111(a). On appeal, Mr. Hathaway renews his argument.

## Discussion

In its entirety, Section 111 provides as follows:

  **(a) In general**.–Whoever–
    **(1)** forcibly assaults, resists, opposes, impedes, intimidates, or

interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; or

**(2)** forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the performance of official duties during such person's term of service,

shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and in all other cases, be fined under this title or imprisoned not more than three years, or both.

  **(b) Enhanced penalty**.–Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than ten years, or both.

18 U.S.C. § 111 (2000) (the maximum sentences permitted under § 111(a) were increased by the Federal Judiciary Protection Act of 2002, P.L. 107-273, tit. I, § 11008(b)).

To address Mr. Hathaway's argument, we must first determine the elements of the offense or offenses proscribed by § 111(a). Specifically, we must decide if a conviction for an "all other cases" felony under § 111(a) requires an additional element, i.e., conduct constituting more than simple assault, beyond that required for a misdemeanor conviction under § 111(a). Our inquiry turns on whether the fact of the existence of non-simple assault for a felony charge is properly viewed as an element or a sentencing factor under § 111(a). "Much turns on the determination that a fact is an element of an offense rather than a sentencing

consideration, given that elements must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt." Jones, 526 U.S. at 232.

A. The Number of Offenses Proscribed by § 111(a)

In the Tenth Circuit, we have yet to consider this issue in the context of § 111(a). However, addressing § 111(b), we held in United States v. Segien, 114 F.3d 1014, 1020 (10th Cir. 1997) that "bodily injury" was not an additional element but was instead just a sentencing factor. We relied primarily on the text and structure of the statute to conclude that Congress intended § 111(b) to be a sentencing enhancement provision. Id. at 1018. To ensure such a reading did not offend the constitution, we also considered the factors identified by the Supreme Court in McMillan v. Pennsylvania, 477 U.S. 79 (1986). Id. at 1019. Though we recognized that a finding of "bodily injury" exposed the defendant to a threefold increase in the possible period of imprisonment, we essentially relied on the McMillan court's failure to require that such a fact be treated as an element and not a sentencing factor. Id. at 1019-20 (citing several cases holding that facts that exposed defendant to increased punishment were not elements, including United States v. Oliver, 60 F.3d 547, 551-54 (9th Cir. 1995), which held that "serious bodily injury" and "death" were sentencing factors and not elements under the federal carjacking statute, 21 U.S.C. § 2119).

Though Segien's holding was limited to § 111(b), its reasoning would appear to be persuasive in the context of the § 111(a) issue we now face. Although "[w]e are bound by the precedent of prior panels," a "superseding contrary decision by the Supreme Court" always controls our analysis. In re Smith, 10 F.3d 723, 724 (10th Cir. 1993). Therefore, like each of our sister circuits that have considered § 111 post-Jones, we now conclude that the Supreme Court's reasoning in Jones and subsequent cases altered the proper analysis of § 111 such that Segien does not control the § 111(a) issue before us. See United States v. Arrington, 309 F.3d 40, 44-47 (D.C. Cir. 2002); United States v. Yates, 304 F.3d 818, 821-23 (8th Cir. 2002); United States v. Campbell, 259 F.3d 293, 296-98 (4th Cir. 2001); United States v. McCulligan, 256 F.3d 97, 102-03 (3d Cir. 2001); United States v. Chestaro, 197 F.3d 600, 607 (2d Cir. 1999); United States v. Nunez, 180 F.3d 227, 233 (5th Cir. 1999).

In Jones, the Supreme Court interpreted 18 U.S.C. § 2119, which imposed different punishments depending on the severity of the injuries suffered by victims of a carjacking, as creating three separate offenses rather than a single offense with three punishments. 526 U.S. at 229. In reaching that conclusion, the Court relied on the text and structure of the statute, comparable federal and state statutes, and the statute's legislative history. Id. at 232-39. In United States v. Carless Jones, 235 F.3d 1231, 1233 (10th Cir. 2000), we recognized that the

Supreme Court in <u>Jones</u> also relied on a constitutional principle later expressly adopted in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) to resolve any doubt about how to decide the "element versus sentencing factor" issue. Absent clear congressional intent to the contrary, we agree with the Fifth Circuit that "<u>Jones</u> teaches us to avoid encroaching on a defendant's Fifth Amendment rights by construing statutes setting out separate punishments as creating separate, independent criminal offenses rather than a single criminal offense with different punishments." <u>Nunez</u>, 180 F.3d at 233.

Applying <u>Jones</u>, as we must, we hold that § 111 defines three separate offenses, each element of which must be charged in the indictment and proven to the jury beyond a reasonable doubt.[1] Though the language and structure of § 111 might suggest the opposite conclusion, <u>Jones</u> makes it clear that such considerations are not dispositive. <u>See</u> 526 U.S. 232-34 (noting that the "look" and structure of the statute is not a reliable guide to congressional intentions). As in <u>Jones</u>, the sentencing provisions of § 111 "not only provide for steeply higher penalties," but also "condition them on further facts . . . that seem quite as important as the elements in the principal paragraph." <u>Id.</u> at 233. These facts, including contact with the victim, bodily injury, and the use of a dangerous

---

[1] Although § 111(b) is not directly implicated in this appeal, our analysis of the impact of <u>Jones</u> on § 111 cannot be artificially limited to § 111(a) only.

weapon, are of the type that the states and the federal government traditionally have considered elements of an offense rather than sentencing factors. See id. at 235-37; Chestaro, 197 F.3d at 608; see also Harris v. United States, 122 S.Ct. 2406, 2412-13 (2002). This tradition increases the probability that Congress intended § 111 to create separate offenses. Jones, 526 U.S. at 234 (noting that if the statute is unclear, "it makes sense to look at what other statutes have done, on the fair assumption that Congress is unlikely to intend any radical departures from past practice without making a point of saying so."). Finally, as in Jones, we find that interpreting § 111 as defining three separate offenses is appropriate because it obviates the need to address the serious constitutional question that arises when a statute relegates to the sentencing judge factfinding that is traditionally reserved for the jury and that goes to the elements of the crime. See id. at 239-40. Our holding essentially aligns us with our sister circuits that have considered this question post-Jones. See Arrington, 309 F.3d at 44-45; Yates, 304 F.3d at 823; Campbell, 259 F.3d at 298; McCulligan, 256 F.3d at 102; Chestaro, 197 F.3d at 608; Nunez, 180 F.3d at 233.

B. The Definition of "Simple Assault" Under § 111(a)

The statute itself offers little guidance on the precise contours of the three separate offenses created by § 111. In fact, because § 111 does not define "simple assault," ambiguity exists about what differentiates "simple assault" from

"all other cases" assault. As this distinction is critical here, we now proceed to differentiate the two types of assault under § 111(a).

Congress added the distinction of "simple assault" and "all other cases" assault to § 111 in 1994. See Violent Crime Control and Law Enforcement Act of 1994, P. L. 103-322, tit. XXXII, § 320101(a)(1). Prior to this addition, Congress used the phrase "simple assault" in only one other criminal statute, 18 U.S.C. § 113 (assaults within maritime and territorial jurisdiction). After observing that neither § 111 nor § 113 define "assault," we have noted that "where a federal criminal statute uses a common-law term of established meaning without otherwise defining it, the general practice is to give that term its common-law meaning." United States v. Gauvin, 173 F.3d 798, 802 (10th Cir. 1999) (quoting United States v. Turley, 352 U.S. 407, 411 (1957)). Applying this practice, we arrived at a definition of assault for use in § 111 and § 113 as either an attempted battery or as placing another in reasonable apprehension of immediate bodily harm. Id.; see also United States v. Calderon, 655 F.2d 1037, 1038 (10th Cir. 1981) (construing 18 U.S.C. § 351 and relying on the definition of "assault" derived for § 113). Specifically addressing § 113, we have held that "simple assault" "is committed by either a willful attempt to inflict injury upon the person of another, or by a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of

- 12 -

immediate bodily harm."  United States v. Joe, 831 F.2d 218, 220 (10th Cir. 1987).  However, such a definition of "simple assault" is really nothing more than a non-exclusive recitation of what constitutes assault.  It does little to differentiate it from "all other cases" assault in § 111 as that statute now exists.

Addressing this problem, the Second and Fifth Circuits have held that § 111 creates the following separate offenses: "(1) simple assault, which, in accord with the common-law definition, does not involve touching; (2) 'all other cases,' meaning assault that does involve contact but does not result in bodily injury or involve a weapon; and (3) assaults resulting in bodily injury or involving a weapon."  Chestaro, 197 F.3d at 606; United States v. Ramirez, 233 F.3d 318, 321-22 (5th Cir. 2000).  However, as noted by the Eighth Circuit, at least one circuit has expressly limited "simple assault" under § 111(a) to those assaults without physical contact.  Yates, 304 F.3d at 822 (citing McCulligan, 256 F.3d at 102-04).  The Eighth Circuit, relying on Congress' use of the phrase in § 113, declined to so limit its definition of "simple assault."  Id.

We now join the Eighth Circuit in holding that, in the context of § 111, the definition of "simple assault" is assault which does not involve actual physical contact, a deadly or dangerous weapon, bodily injury, or the intent to commit murder or any felony other than those referred to in § 113(a)(2).  We are persuaded by the reasoning of the Eighth Circuit that "simple assault" in § 111

- 13 -

should be defined by reference both to the common law meaning of assault and to the meaning of "simple assault" as Congress uses that phrase in § 113. See Yates, 304 F.3d at 823. In the same act in which Congress added the distinction of "simple assault" versus "all other cases" assault to § 111, it also amended § 113 to redesignate the various types of assault that are not, in its view, "simple assault." See Violent Crime Control and Law Enforcement Act of 1994, P. L. 103-322, tit. XVII, § 170201. Therefore, we hold that "all other cases" assault under § 111(a) refers to any assault that is neither "simple assault" as we have defined that phrase above nor assault as defined in § 111(b). Thus, "all other cases" assault under § 111(a) includes any assault that involves actual physical contact or the intent to commit murder or any felony other than those referred to in § 113(a)(2) but does not involve a deadly or dangerous weapon or bodily injury. In light of this definition, either actual physical contact or the intent to commit murder or any felony other than those referred to in § 113(a)(2) is a required and essential element of the felony offense of "all other cases" assault under § 111(a). To sustain a felony conviction under § 111(a), Jones requires that, in addition to the other required elements, one of these two elements also "be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt." 526 U.S. at 232.

C. Mr. Hathaway's Arguments

Though we have determined that either actual physical contact or the intent to commit murder or any felony other than those referred to in § 113(a)(2) is a required element of a felony offense under § 111(a), here Mr. Hathaway's actual sentence was not in excess of the maximum statutory penalty of one year imprisonment for a misdemeanor conviction. Nonetheless, Mr. Hathaway asserts that Apprendi should apply here because he is prejudiced by the collateral consequences that attach to a felony conviction as opposed to a misdemeanor conviction, including, among others, the loss of the right to vote, the right to hold public office, the right to sit on a jury and the right to possess any type of firearm. We need not decide whether an Apprendi analysis is appropriate at this point, because we must first address the issue of what crime was charged. Essentially, Mr. Hathaway argues that although the indictment partially quoted the text of the statute, it failed to include an essential element of a felony charge under § 111(a) and thus charged only a misdemeanor offense. Mr. Hathaway does not argue merely that the indictment failed to allege an essential element of the offense for which he was convicted, but rather that the indictment charged an offense different than the one for which he was sentenced.

Whether Mr. Hathaway's argument is couched in terms of the sufficiency of the indictment or in terms of constructive amendment based on the jury

instructions, our review is de novo. United States v. Avery, 295 F.3d 1158, 1173-74 (10th Cir. 2002); United States v. Van Tieu, 279 F.3d 917, 920 (10th Cir. 2002). "In federal prosecutions, 'no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury' alleging all the elements of the crime." Harris, 122 S.Ct. at 2410 (quoting U.S. Const. amend. V and citing Hamling v. United States, 418 U.S. 87, 117 (1974)). "An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." United States v. Dashney, 117 F.3d 1197, 1205 (10th Cir. 1997). Furthermore, "[i]t is generally sufficient that an indictment set forth an offense in the words of the statute itself, as long as those words themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." Hamling, 418 U.S. at 117 (quotations omitted).

The indictment here failed to allege a required and essential element of the felony crime for which Mr. Hathaway was convicted. As noted above, the only difference between a felony offense and a misdemeanor offense under § 111(a) is the nature of the assault. Although the indictment charged the offense by quoting a portion of the statute, it failed to quote the portion differentiating "simple

assault" and "all other cases" assault for which felony penalties attach. I R. Doc. 1 at 1. Furthermore, the indictment did not allege any factual details of Mr. Hathaway's conduct; it contained no allegation of physical contact between Mr. Hathaway and Agent McKimens. Id. As a result, this indictment did not set forth all the elements of the offense of conviction, and did not put Mr. Hathaway on fair notice that he needed to defend against the felony charge. Although the record reflects that penalty language indicating a felony charge was appended to the indictment on a separate page, the record is also silent as to when the page was appended and whether the grand jury even saw or considered this language. On the basis of no more facts than these, we decline to even consider how this language affects the sufficiency of the indictment. In light of the foregoing, we hold that this indictment was insufficient to sustain Mr. Hathaway's conviction for a felony violation under § 111(a).

Mr. Hathaway first raised the indictment issue in the district court after the jury rendered its verdict but prior to sentencing. I R. Doc. 27. A defendant cannot waive his right to challenge an indictment based upon its failure to charge an offense. Fed. R. Crim. P. 12(b)(2). However, in past cases, we have applied a liberal construction rule when reviewing post-verdict challenges to an indictment asserting the absence of an element of the offense. See, e.g., Dashney, 117 F.3d at 1205-06; Avery, 295 F.3d at 1174. Here, Mr. Hathaway challenged the

- 17 -

indictment immediately upon learning that he was about to be sentenced as though he had been convicted of a felony as opposed to a misdemeanor violation of § 111(a). We need not decide whether Mr. Hathaway was in fact, or should have been, aware prior to his receipt of the PSR that he faced a felony charge. Here, even were we to apply the liberal construction rule, we would still have an indictment suffering from much more than a technical deficiency, as it simply did not contain any words to suggest that a felony was charged. See id. In short, this indictment utterly failed to put Mr. Hathaway on notice that he faced the felony charge for which he was convicted.

For the foregoing reasons, we are not long detained by the Government's assertion that the indictment deficiency here was harmless pursuant to United States v. Prentiss, 256 F.3d 971, 984 (10th Cir. 2001) (en banc). As Prentiss itself reminds us, prejudice to the defendant is a controlling consideration. Id. at 983. We have little doubt that a defendant convicted for a different offense than that charged in the indictment undoubtedly suffers prejudice and harm thereby.

Although the indictment here was insufficient to allege a felony violation of § 111(a), it was sufficient to allege a misdemeanor violation of § 111(a) involving simple assault. Mr. Hathaway does not contend that he was not validly convicted of violating § 111(a); instead, he argues that in light of the deficient indictment, the district court could only have viewed his conviction as one for the

- 18 -

misdemeanor.  We agree.  Accordingly, we hereby REMAND to the district court for compliance with this OPINION that all of Mr. Hathaway's records be corrected to reflect his conviction for a misdemeanor violation of § 111(a).