**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 18, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

PHILLIP ANGEL GARCIA,

    Defendant - Appellant.

No. 17-2019

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. Nos. 1:16-CV-00240-JB-LAM & 1:07-CR-00788-JB-1)**
_____

Submitted on the briefs:[*]

Michael A. Keefe, Assistant Federal Public Defender, Albuquerque, New Mexico, for Appellant.

James D. Tierney, Acting United States Attorney, James R.W. Braun, Assistant United States Attorney, Albuquerque, New Mexico, for Appellee.
_____

Before **TYMKOVICH**, Chief Judge, **HARTZ** and **O'BRIEN**, Circuit Judges.
_____

**O'BRIEN**, Circuit Judge.
_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

More snow is here added to the *Johnson* avalanche. *Johnson v. United States*, 135 S. Ct. 2551 (2015) (*Johnson II*). In what has become a common refrain in a host of diverse circumstances, Phillip Angel Garcia claims the New Mexico robbery statute does not satisfy the element of violent physical force necessary for an ACCA sentencing enhancement. He is wrong; it does.

## I. BACKGROUND

Garcia originally pled guilty to one count of possessing a firearm and ammunition after having been convicted of a felony, a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He moved to withdraw his guilty plea, but the judge denied the motion. His crime carried a prison term of up to 10 years, *id.* § 924(a)(2), but because he had three or more prior "violent felony" convictions, the Armed Career Criminal Act of 1984 (ACCA) increased his punishment range to a mandatory 15 years to life. *Id.* § 924(e)(1). In 2008, the judge sentenced him to a prison term of 188 months. He appealed; we affirmed. *United States v. Garcia*, 577 F.3d 1271, 1273 (10th Cir. 2009). That appeal did not raise the ACCA issue, this one does.

As noted, the ACCA mandates an enhanced sentence of imprisonment of not less than 15 years when the violator of § 922(g) has "three previous convictions . . . for a violent felony." 18 U.S.C. § 924(e)(1). To fall within the definition of a violent felony, a prior conviction must be "punishable by imprisonment for a term exceeding one year," *id.* § 924(e)(2)(B), and must satisfy one of three predicates:

2

(1) Under the Elements Clause, it must have "as an element the use, attempted use, or threatened use of physical force against the person of another," § 924(e)(2)(B)(i);

(2) Under the Enumerated-Offenses Clause, it must be a categorical match to the generic offenses of "burglary, arson, or extortion," § 924(e)(2)(B)(ii); or

(3) Under the Residual Clause, it must "otherwise involve[] conduct that presents a serious potential risk of physical injury to another," *id.*

*United States v. Harris*, 844 F.3d 1260, 1263 (10th Cir. 2017), *petition for cert. filed* (U.S. Apr. 4, 2017) (No. 16-8616).

The Presentence Report concluded Garcia should be sentenced under the ACCA, using three of his prior felony convictions—arson, residential burglary, and possession of a deadly weapon by a prisoner—each of which it identified as a violent felony. The PSR also listed his other prior convictions, including a third-degree robbery conviction under N.M. Stat. Ann. § 30-16-2.

It calculated Garcia's advisory Guideline sentencing range at 188 to 235 months. The judge adopted the PSR's findings and sentenced Garcia at the bottom of this range, 188 months of imprisonment, to be followed by a three-year term of supervised release.

In 2015, the Supreme Court decided *Johnson II*. The Court held because the Residual Clause was unconstitutionally vague, "imposing an increased sentence under the residual clause . . . violates the Constitution's guarantee of due process."

3

*Johnson II*, 135 S. Ct. at 2563. It left intact the Elements and Enumerated-Offenses Clauses. *Id.*

On March 30, 2016, Garcia filed a § 2255 motion contending his sentence was unconstitutional under *Johnson II*. He claimed one of his three predicate convictions, possession of a deadly weapon by a prisoner, only qualified as a violent felony under the then defunct Residual Clause.

The government conceded this point, but argued the (later declared and retroactively applied) error was harmless, because, even without the weapon possession conviction Garcia had three qualifying prior violent felony convictions: a conviction for burglary, an arson conviction, and a New Mexico robbery conviction. The robbery conviction, it said, qualified as a violent felony under the Elements Clause and was an apt substitution for the conviction for unlawful weapon possession.

The government's argument presented several complications. In the original sentencing the judge had not expressly relied on the New Mexico robbery conviction as an ACCA qualifying conviction. And in *Johnson v. United States*, 559 U.S. 133 (2010) (*Johnson I*), the Supreme Court had concluded "physical force" under the Elements Clause "means *violent* force—that is, force capable of causing physical pain or injury to another person." *Id.* at 140. Mere offensive touching, for example, does not suffice. *See id.* at 139-42. The government argued Garcia's robbery conviction qualified under this standard because the use of violent force was a necessary element of New Mexico robbery. Alternatively, it argued against applying

4

the *Johnson I* standard retroactively to Garcia's robbery conviction. Garcia contested these arguments.

Before the judge decided Garcia's § 2255 motion, the government changed course. It withdrew its argument about the applicability of *Johnson I* and conceded "New Mexico's robbery can be committed without force causing physical pain or injury." R., Vol. 4 at 57. This meant the robbery conviction did not qualify as a violent felony under the ACCA's Elements Clause after all. After that concession the Probation Office also revisited its position; it filed a Revised Sentencing Memorandum in which it stated Garcia's robbery conviction was not a violent felony and he was therefore eligible for resentencing.

On the same day the judge entered his Memorandum Opinion and Order, the government filed a supplemental brief in which it again reversed course. Citing our recently published decision in *Harris*, 844 F.3d 1260, the government's second revised position was that the "New Mexico robbery in the third degree is indeed a qualifying violent felony under the 'force clause' [or "Elements Clause"] of 18 U.S.C. § 924(e)(2)(B)(i)." R., Vol. 4 at 158. It does not appear the judge considered this supplemental brief in reaching a decision.

He agreed with Garcia in part; the weapon conviction did not qualify as a predicate offense under *Johnson II*. But, he said, the error was harmless because the New Mexico robbery conviction could instead serve as his third predicate conviction because N.M. Stat. Ann. § 30-16-2, which prohibits theft by use or threatened use of force or violence, qualified as a violent felony under the Elements Clause as

5

interpreted by *Johnson I*. Garcia therefore had three qualifying predicate violent felonies under the ACCA.

The judge denied the § 2255 motion. In a separate order, he denied Garcia's request for a Certificate of Appealability (COA). We later granted a COA and now affirm.

## II. DISCUSSION

### 1. Standard of Review and Applicable Law

"We review the district court's legal rulings on a § 2255 motion de novo and its findings of fact for clear error." *Harris*, 844 F.3d at 1263 (brackets and internal quotation marks omitted). "Whether a prior conviction satisfies the ACCA's violent felony definition is a legal question we review de novo." *United States v. Titties*, 852 F.3d 1257, 1263 (10th Cir. 2017). "[T]he Government bears the burden of proving a prior conviction qualifies under the ACCA," *see id.* at 1272 n.19, and it is the government's burden to prove the Residual Clause error was harmless, *see generally O'Neal v. McAninch*, 513 U.S. 432, 437-45 (1995) (stating burden of proving harmlessness of error affecting defendant's substantial rights lies with government).

To determine this issue, "we apply the categorical approach, focusing on the elements of the crime of conviction, not the underlying facts." *Harris*, 844 F.3d at 1263. Thus, we must determine whether the New Mexico robbery statute "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* at 1263-64 (quoting § 924(e)(2)(B)(i)).

6

This inquiry requires application of both federal law and [New Mexico] state law.  Federal law defines the meaning of the phrase "use, attempted use, or threatened use of physical force" in § 924(e)(2)(B)(i).  And state law defines the substantive elements of the crime of conviction. . . .

A two-step inquiry resolves whether [New Mexico's] robbery statute requires physical force as that term is used in the ACCA:  we must identify the minimum "force" required by [New Mexico] law for the crime of robbery and then determine if *that* force categorically fits the definition of physical force.  The Supreme Court has reminded us that in construing the minimum culpable conduct, such conduct only includes that in which there is a realistic probability, not a theoretical possibility, the state statute would apply.  Decisions from the state supreme court best indicate a realistic probability, supplemented by decisions from the intermediate-appellate courts.

*Harris*, 844 F.3d at 1264 (citations and internal quotation marks omitted).

## 2.  New Mexico's Robbery Statute

The New Mexico robbery statute provides:

Robbery consists of the theft of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence.[1]

---

[1] In *United States v. Lujan*, 9 F.3d 890, 891-92 (10th Cir. 1993), we considered whether the defendant's prior New Mexico robbery conviction qualified as a violent felony for ACCA purposes.  In a single-sentence analysis, we stated "[t]he New Mexico robbery statute . . . contains the required element of force [because] '[r]obbery consists of the theft of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence.'"  *Id.* at 892 (emphasis omitted) (quoting N.M. Stat. Ann. § 30-16-2 (1978)).

*Lujan* did not discuss or determine the issue the Supreme Court resolved in *Johnson I*:  the minimum necessary quantum of force which qualifies as "physical force" for purposes of a "violent felony" conviction as defined in the ACCA.  Nor did it scrutinize the elements of New Mexico robbery under that standard.  *See Harris*, 844 F.3d at 1266 ("It is *what is required by* the 'use of force, threats, or intimidation' element [in the Colorado robbery statute] *that is at the center of this appeal*." (emphasis added)).  We are therefore not bound by the result or analysis in

(continued)

7

Whoever commits robbery is guilty of a third degree felony.

Whoever commits robbery while armed with a deadly weapon is, for the first offense, guilty of a second degree felony and, for second and subsequent offenses, is guilty of a first degree felony.

N.M. Stat. Ann. § 30-16-2.[2]

A third-degree robbery conviction under this statute includes two essential elements: (1) the theft of anything of value, from the person of another or from the immediate control of another; (2) by the use or threatened use of force or violence.[3]

---

*Lujan*. *Cf. United States v. Hathaway*, 318 F.3d 1001, 1006 (10th Cir. 2003) ("Although we are bound by the precedent of prior panels, a superseding contrary decision by the Supreme Court always controls our analysis." (internal quotation marks omitted)).

[2] The statute provides for both third degree robbery, and for first or second degree robbery when the offender is armed with a deadly weapon. The parties agree Garcia was convicted of third degree robbery, so we only address that statutory provision.

[3] The parties do not argue that the alternate language contained in the first element (theft of an object from a person, as opposed to theft of an object in the person's immediate control) defines separate crimes. And although it appears there are four different means of satisfying the second element (use of force, use of violence, threatened use of force, and threatened use of violence), the parties do not ask us to treat these as separate crimes for the purpose of our analysis. In fact, Garcia focuses entirely on the actual use of force or violence and presents no argument at all concerning whether the "threatened use of force" or "threatened use of violence" would satisfy the ACCA's definition. We therefore decline to consider the issue. *See Harris*, 844 F.3d at 1271 (Ebel, J., concurring, stating where neither the defendant nor the government addressed threat or intimidation language in Colorado robbery statute, it was unnecessary to reach the issue). This leaves the two other apparent means of satisfying the second element: use of force, and use of violence. But the parties agree these terms are used interchangeably in the statute and "do not substantively state an alternative means of committing the offense." *State v. Curley*, 939 P.2d 1103, 1104 (N.M. Ct. App. 1997). We accept the concession, which leaves us free of a "divisible" statute problem; we may simply apply the categorical approach to examine the prohibited use of force or violence.

Under the categorical approach, we focus on "the *least* of the acts criminalized" under the state statute. *Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013) (emphasis added) (brackets and internal quotation marks omitted).

### 3. Supreme Court's Definition of "Physical Force"

We will address the New Mexico courts' construction of § 30-16-2, but first we look to the Supreme Court's discussion of "physical force" for purposes of the Elements Clause in § 924(e)(2)(B)(i). It provides the groundwork for evaluating the New Mexico statute. *See Harris*, 844 F.3d at 1264.

In *Johnson I*, the Court determined "the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson I*, 559 U.S. at 140. The Court acknowledged that for common-law battery the "force" element could be "satisfied by even the slightest offensive touching." *Id.* at 139. But, it said, the ACCA demands more. The proper definition of the term as used in the ACCA (taken in the context of defining a *violent* felony) did not suggest Congress intended to adopt a *de minimis*, common-law meaning for purposes of the Elements Clause. *Id.* at 139-40. Instead, the Court emphasized the clear "connotation of strong physical force" in the ACCA's statutory language. *Id.* at 140. As an example of physical or violent force which would amount to more than mere offensive touching, the *Johnson I* Court identified "a slap in the face." 559 U.S. at 143. In a later case, *United States v. Castleman*, 134 S. Ct. 1405 (2014), Justice Scalia, *Johnson I*'s author, provided additional examples of actions which exceed "mere offensive touching" and, similar to a slap in the face, are "capable of causing

9

physical pain or injury." *Id.* at 1421 (Scalia, J., concurring). He cited "hitting, slapping, shoving, grabbing, pinching, biting, and hair pulling." *Id.* (brackets and internal quotation marks omitted).[4] Reduced to its essence the ACCA requires violent physical force. Here there is no physical force debate, only the requirement of violent force—force capable of causing injury or pain. Significantly, the Court's definition of "violent force" does not require the force used to *actually* cause physical pain or injury, only that it be *capable* of doing so. *Id.* We will later return to that salient point.

### 4. *United States v. Harris*

Our recent *Harris* decision provides an analytical template. In it we applied the ACCA's "physical force" standard to a Colorado robbery statute (with elements very similar to those of N.M. Stat. Ann. § 30-16-2). *See Harris*, 844 F.3d at 1266. The Colorado Statute required the defendant "[1] knowingly [took] anything of value from the person or presence of another [2] by the use of force, threats, or intimidation." *Id.* (quoting Colo. Rev. Stat. § 18-4-301(1) (2016) (emphasis omitted)). We looked at Colorado decisions to discover how the statute is construed and applied in actual cases, "where the rubber meets the road."

In reaching this result, we cited *People v. Borghesi*, 66 P.3d 93, 99 (Colo. 2003) (en banc), a double-jeopardy case in which the Colorado Supreme Court

---

[4] Although a concurring opinion is not binding on us, we may consider it for its persuasive value. *See* Bryan A. Garner, et al., *The Law of Judicial Precedent* 183 (2016). We find Justice Scalia's concurrence in *Castleman* persuasive on the quantum of force required to constitute "violent" force.

discussed whether Colorado robbery is a crime against the person or against property. The *Borghesi* court noted the common-law definition of robbery employed by the Colorado legislature, noting "it is the 'violence' that distinguishes common law larceny from robbery" and "'the gravamen of the offense of robbery is the violent nature of the taking.'"[5] *Harris*, 844 F.3d at 1266-67 (quoting *Borghesi*, 66 P.3d at 99, 100-01). Relying on this language, we concluded robbery in Colorado "categorically matches the definition of physical force assigned by the Supreme Court in *Johnson I*." *Harris*, 844 F.3d at 1268 (internal quotation marks omitted).

### 5. New Mexico Case Law

Since *Johnson I*, some federal circuit courts have decided a robbery statute which criminalizes the use of *any* physical force, however minimal, to overcome the victim's resistance and seize her property—including merely grabbing the victim's purse or bumping, nudging, or jostling the victim in order to obtain it—does not meet the violent force required by the ACCA. *See, e.g.*, *United States v. Yates*, 866 F.3d 723, 730-31 (6th Cir. 2017) (collecting cases). By contrast, convictions under robbery statutes requiring more than minimal actual force are violent felonies. *See id.* at 731-32. The question is, on which side of this line does § 30-16-2 fall?

That, of course, depends on how New Mexico courts have applied the statutory language. Honoring the *Harris* protocol, we now undertake that analysis, starting with the general and then moving to the specific. In *Harris,* we found strongly

---

[5] Unlike the New Mexico statute, the Colorado statute did not use the word "violence".

11

persuasive the Colorado Supreme Court's statement "robbery in Colorado requires a 'violent taking,'" which we determined was "consistent with the physical force required by the ACCA's elements clause." *Harris*, 844 F.3d at 1266.

The government finds an analogue to the Colorado case, *Borghesi,* in the New Mexico Supreme Court's case of *State v. Bernal*, 146 P.3d 289 (N.M. 2006). As in *Borghesi*, the New Mexico court in *Bernal* set out to determine whether a defendant may lawfully be convicted for more than one count of robbery by attempting to take the same property from more than one person. *Id.* at 293. As did the Colorado Supreme Court, the New Mexico Supreme Court, relying in part on prior New Mexico cases,[6] resolved the matter by asking whether robbery is a crime against property or against persons. And, like the Colorado Supreme Court, the New Mexico Supreme Court concluded its robbery statute protects persons. *See id.* at 296 ("Robbery is not merely a property crime, but a crime against a person.").

In reaching these conclusions, the New Mexico Supreme Court discussed the nature of robbery under New Mexico law in terms very similar to those used by the Colorado Supreme Court in *Borghesi*. The court repeatedly referred to "violence" as a distinguishing characteristic of a robbery offense, stating "robbery is a crime designed to punish the use of violence" and "the robbery statute clearly is designed to

---

[6] Garcia notes that *Bernal* post-dates his robbery conviction. He argues to the extent *Bernal* departs from prior New Mexico cases, it did not define the crime of robbery at the time of his prior conviction and therefore should not be considered in interpreting the quantum of force. But *Bernal* did not so much depart from those prior New Mexico cases as it interpreted them. We therefore find this argument without merit.

protect citizens from violence." *Id.* It is "distinct from larceny because it requires, and is designed to punish, the element of force." *Id.*

*Harris* and *Bernal* provide strong persuasive authority in favor of concluding § 30-16-2 is a crime involving violent force. But they are not dispositive of the question. *Bernal* does not provide a specific discussion of the quantum of force required to satisfy the statute. Also, our inquiry is statute-specific and requires more than mere reliance on *Harris*'s discussion of Colorado law. Unlike the Colorado law summarized in *Harris*, New Mexico has issued several nuanced decisions specifically addressing the quantum of force required for a robbery conviction. We must carefully consider these cases.

The only published New Mexico Supreme Court case offering direct guidance appears to be *State v. Clokey*, 553 P.2d 1260, 1260 (N.M. 1976). In *Clokey*, the New Mexico Supreme Court held "the evidence supported the verdict of the jury that the snatching of the purse *was accompanied by force sufficient to convert the crime from larceny to robbery.*" *Id.* (emphasis added). Unfortunately, in its terse decision, the New Mexico Supreme Court did not discuss the specific facts, instead referring only, and quite generically, to the unquoted facts recited in the defendant's docketing statement. *See id.*

Recently, however, a judge of the United States District Court for the District of New Mexico located and quoted from the forty-year-old docketing statement cited in *Clokey*. The government does not challenge Garcia's use of and quotation from this factual statement, which reads as follows:

13

[t]he complaining witness was walking toward the [d]efendant and was carrying a purse under her left arm. The purse was not fastened to her person, nor was it in the grasp of her hand. The [d]efendant allegedly ran toward the complaining witness and with his left hand pushed the purse through the woman's arm, grabbed the purse and ran. It is alleged that in so doing the [d]efendant touched the inside of the woman's arm, causing the woman to stumble. The woman was in her seventies and tottered unsteadily when she walked. There was no resistance offered by the woman whose purse was taken; there was no struggle for the purse; and the [d]efendant, in the complaining witness's words, "snatched" the purse in one continuous motion and ran.

*United States v. King*, 248 F. Supp. 3d 1062, 1070 (D.N.M. 2017) (quoting

*New Mexico v. Clokey*, No. 2479, Docketing Statement at 1-2 (N.M. App. filed

Mar. 22, 1976)). In the absence of objection we will take judicial notice of the facts

the District of New Mexico quoted in *King*.

This statement of facts indicates the defendant "touched" the inside of the

woman's arm. We know that mere "touching" is insufficient to satisfy the violent

force standard. *Johnson I*, 559 U.S. at 139-40. On the other hand, the "touch" was

forceful enough to cause the victim to stumble, and the defendant "pushed the purse

through the woman's arm." Could this quantum of force represent a "shov[e]" or a

"grab[]" capable of causing physical pain or injury? *Castleman*, 134 S. Ct. at 1421

(internal quotation marks omitted).[7] We are doubtful, but it may have been a force

*capable* of causing pain or injury by setting in motion a chain of events leading to

---

[7] Justice Scalia's concurring opinion included grabbing and shoving as examples of violent force. His examples, while persuasive, are not included in the majority opinion. *See* note 4, *supra*.

14

that result.[8]  The force used was sufficient for the assailant to seize a purse from the victim and, quite predictably, it was sufficient to cause her to stumble.  On the other hand, *Clokey* may be viewed as involving mere jostling of the victim to dislodge her property rather than the use of "violent force" sufficient to satisfy *Johnson I* and the ACCA violence standard.  *See, e.g.*, *Yates*, 866 F.3d at 733-34 (concluding Ohio robbery does not constitute a crime of violence, because snatching a purse without any resistance from the victim can constitute sufficient use of force to violate the statute).

The lack of an express analysis by the New Mexico Supreme Court in *Clokey* leaves us uncertain.  The court viewed the facts in the light most favorable to the state, *Clokey*, 553 P.2d at 1260, but we do not know which facts it found sufficiently persuasive to support its conclusion that the statutory "force or violence" element was satisfied.  A more detailed analysis would have been useful.  In addition, as we will see, *Clokey*'s summary result does not address the nuanced approach adopted in later, more precisely reasoned New Mexico cases.  Since *Clokey* does not resolve our issue, we turn next to cases from the New Mexico Court of Appeals.

---

[8] *Castleman*, 134 S. Ct. at 1415 ("That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter."); *cf. United States v. Vail-Bailon*, 868 F.3d 1293, 1298-1302 (11th Cir. 2017) (en banc) (holding battery statute satisfied the "capable of causing pain or injury" standard, even though conviction did not require perpetrator to specifically intend the physical harm that actually resulted); *Douglas v. United States*, 858 F.3d 1069, 1072 (7th Cir. 2017) (stating under ACCA there is no "*separate* intent element attached to the degree of injury.  It is enough to 'use' force."), *petition for cert. filed* (U.S. Oct. 31, 2017) (No. 17-6619).

15

The earliest of the cases cited by the parties is *State v. Sanchez*, 430 P.2d 781 (N.M. Ct. App. 1967). In it, the victim was using a restroom in a bar. The defendant put his fist against the victim's back and pulled his wallet from his pants pocket. On these facts, the Court of Appeals decided there was insufficient force or fear of force to justify a robbery conviction. *Id.* at 782.

According to the Court of Appeals, where the state relies on the use of force, the issue is "not how much force was used, but whether the force was sufficient to compel the victim to part with his property." *Id.* Similar language can be found in other New Mexico cases, *see, e.g.*, *State v. Martinez*, 513 P.2d 402, 403 (N.M. Ct. App. 1973) ("The amount or degree of force is not the determinative factor."). *Martinez* immediately follows this language by the statement "*[e]vidence of jostling or causing the victim to fall as property is taken is a sufficient showing to establish the use of force.*"[9] *Id.* (emphasis added).

But courts have not simply relied on a state court's statement that the degree of force used is immaterial to a conviction; they have also examined the state cases to

[9] This is inconsistent with *Sanchez*, 430 P.2d at 782, which indicates touching or jostling is *not* sufficient force for a robbery conviction. *Compare also* the Committee Commentary to the New Mexico pattern jury instruction for robbery, NMRA UJI 14-1620, which states the amount of force used to commit robbery is "immaterial." When such language is used to describe state statutes—holding no specific quantum of force is required to commit a robbery—it precludes the use of convictions under the Elements Clause of the ACCA. *See, e.g.*, *United States v. Mulkern*, 854 F.3d 87, 93 (1st Cir. 2017) (robbery conviction under Maine statute was not a violent felony under the ACCA because "Maine's highest court recognizes that '*any* physical force' suffices to satisfy the 'physical force' element [of the robbery statute]").

16

see what level of force was actually deemed sufficient in practice. *See, e.g.*, *United States v. Gardner*, 823 F.3d 793, 803-04 (4th Cir. 2016) (analyzing North Carolina cases); *United States v. Vail-Bailon*, 868 F.3d 1293, 1306 (11th Cir. 2017) ("[T]he real-world examples of Florida felony battery we are aware of all involve conduct that clearly required the use of physical force."). We will do the same. Although our focus is on the statutory elements, the facts are relevant to a determination of how those elements are actually applied in the state's courts and hence would be realistically applied there. As will be seen, the New Mexico courts have required a greater quantum of force for a robbery conviction than the above language might suggest. Significantly, where the evidence showed less force was involved, they have not hesitated to reverse.

In *Sanchez*, finding the force used was not sufficient to satisfy the robbery statute, the court explained,

> The situation here is comparable to those pickpocket or purse snatching cases, where even though there was some touching or jostling involved as the property was taken, the crime was larceny because of the absence of force or fear.

*Sanchez*, 430 P.2d at 782 (citations omitted).

The primary point made here appears to be the bathroom theft was not robbery because force (although physical) was not used to overcome the victim's resistance. But we can also glean from the applied facts in *Sanchez* that "force," for purposes of a New Mexico robbery conviction, involves something more than incidental "touching or jostling."

17

In *State v. Curley*, 939 P.2d 1103 (N.M. Ct. App. 1997), which is a decision involving a purse snatching, the court provided a detailed analysis of the quantum of force required for robbery. The recited facts were:

> [T]he victim was walking out of a mall with her daughter when Defendant grabbed her purse and ran away. The victim described the incident as follow[s]: "I had my purse on my left side . . . and I felt kind of a shove of my left shoulder where I had my purse strap with my thumb through it and I kind of leaned-was pushed-toward my daughter, and this person came and just grabbed the strap of my purse and continued to run." The victim used the words "grab" or "pull" to describe the actual taking of the purse and "shove" or "push" to describe what Defendant did as he grabbed or "pulled [the purse] from her arm and hand." However, there was also evidence that the victim's thumb was not through the strap of the purse, but was rather on the bottom of the purse. The purse strap was not broken, and the victim did not testify that she struggled with Defendant for the purse in any way or that any part of her body offered any resistance or even moved when the purse was pulled from her arm and hand. Defendant presented evidence that he was drunk and did not remember the incident at all.

*Id.* at 1104.

The trial court refused to give a lesser included offense (larceny) instruction on these facts, but the New Mexico Court of Appeals reversed. It said if the defendant's shove was excluded from the quantum of force (because the defendant was drunk and may not have intentionally shoved the victim), the remaining force would not have been sufficient to constitute robbery, only larceny. *See id.* at 1105. The court went on to explain if the defendant "shoved the victim to help himself relieve her of the purse, and the shove and Defendant's other force in grabbing the purse had that effect," the facts would establish robbery. *Id.* at 1107. *Curley* holds intentionally shoving a person (one of Justice Scalia's examples of violent force, *see Castleman*, 134 S. Ct. at 1421) would be sufficient to satisfy the element of force

18

for robbery, but merely snatching a purse without any resistance from the victim would not.[10]  This is consistent with the government's understanding that a New Mexico robbery conviction requires the use of violent force (force capable of causing pain or injury), as defined in *Johnson I*.[11]

The *Curley* court explained "robbery is committed when attached property is snatched or grabbed by sufficient force so as to overcome the resistance of attachment." *Id.* at 1105.  The *Curley* court specifically rejected the so-called Massachusetts rule, which finds sufficient force present "as long as [a] person is aware of the application of force which relieves the person of property and the taking is therefore, at least to some degree, against the victim's will." *Id.*; *see also Harris*,

[10] Garcia relies on dicta from *Curley* setting out general principles to distinguish larceny from robbery, including language which indicates using force to remove items attached to a victim's clothing with her knowledge could support a robbery conviction. *See Curley*, 939 P.2d at 1106.  But this dicta, which also includes the force involved in jostling the victim, is much broader than the actual application the robbery statute has received in New Mexico courts.  Garcia does not cite a New Mexico case upholding a robbery conviction under those facts, and the dicta in *Curley* about items attached to clothing seems inconsistent with language in *Bernal*, 146 P.3d at 296, which indicates the robbery statute is designed to punish violent force directed against a person, rather than solely protecting property.

[11] We are not persuaded by cases such as *Gardner*, 823 F.3d at 803-04, which concluded that North Carolina robbery was not a violent felony under the ACCA by relying in part on a North Carolina case upholding "a conviction when a defendant pushed the shoulder of an electronics store clerk, causing her to fall onto shelves while the defendant took possession of a television."  Shoving a person and causing her to fall involves force capable of producing pain or injury. *Cf. United States v. Thomas*, 849 F.3d 906, 909 (10th Cir.) ("[A]ggressive pushing . . . is sufficient [to satisfy the condition of violent force] under *Johnson*."), *cert. denied*, 86 USLW 3716 (U.S. Oct. 10, 2017) (No. 16-9389).

19

844 F.3d at 1267-68 (finding it significant to a violent-force inquiry Colorado does not follow the Massachusetts approach).

In his concurrence in *Castleman*, Justice Scalia included "grabbing" as an example of violent force. *Castleman*, 134 S. Ct. at 1421. He may have been referring to grabbing a body part rather than the victim's property. But where the victim is clinging to her property and resisting the force used to take it away a distinction between grabbing the person or her property seems immaterial to the violent force inquiry. A direct/indirect test is useless. The Supreme Court has recognized physical force "need not be applied directly to the body of the victim" to be capable of producing bodily injury. *Id.* at 1414-15 (internal quotation marks omitted). We agree with the Seventh Circuit; the proper focus is not on whether "the force employed [is] of such a degree as to cause (or threaten) more serious injuries," but whether the force used has "the capacity to inflict physical pain, if not concrete physical injury, upon the victim." *United States v. Jennings*, 860 F.3d 450, 457 (7th Cir. 2017), *petition for cert. filed* (U.S. Nov. 17, 2017) (No. 17-6835).

Other New Mexico cases illustrate how force applied through struggle over property is capable of causing pain or injury. In *State v. Segura*, 472 P.2d 387 (N.M. Ct. App. 1970), the force used was held sufficient for a robbery conviction where the defendant grabbed a shopping bag from the victim and pulled it away from her so hard it caused the victim to fall on the ground. *See id.* at 387-88. Force sufficient to cause a victim to fall to the ground is certainly force capable of causing pain or injury.

20

In *State v. Verdugo*, 164 P.3d 966 (N.M. Ct. App. 2007), the New Mexico Court of Appeals found sufficient force to support a robbery conviction where the defendant "drove up [alongside the victim] while she was walking in a parking lot, and that he grabbed her purse from her arm. She testified that she struggled to retain control of the purse, but that the strap eventually broke." *Id.* at 974. This level of force was not minimal; jerking on a purse from a moving car was certainly capable of causing physical pain or injury to the victim.[12]

Grabbing, along with striking the victim, was at issue in *State v. Martinez*, 513 P.2d 402 (N.M. Ct. App. 1973). In *Martinez*, the New Mexico Court of Appeals found sufficient force to sustain a robbery conviction where the perpetrator grabbed dollar bills in the breast pocket of the victim's jacket, ripping the jacket, and hit the

---

[12] Garcia argues *Verdugo*'s facts are comparable to those described in *United States v. Bell*, 840 F.3d 963, 966 (8th Cir. 2016), in which the Eighth Circuit held a prior Missouri state conviction for second-degree robbery did not constitute a "crime of violence" for Guideline sentencing purposes. The Eighth Circuit, citing a Missouri Court of Appeals decision concerning purse-snatching, concluded "in Missouri a defendant can be convicted of second-degree robbery when he has physical contact with a victim but does not necessarily cause physical pain or injury." *Id.* The court acknowledged this is not the same as the *Johnson I* standard, which targets whether the force is *capable* of causing physical pain or injury. *Id.* It finessed this distinction by pointing to a "reasonable probability" Missouri *could* apply its statute, or had already done so, to conduct falling short of violent force. *Id.* (internal quotation marks omitted). We do not find this analysis persuasive.

Garcia also points to *United States v. Swopes*, 850 F.3d 979 (8th Cir. 2017) (per curiam), which applied *Bell* to the violent-felony inquiry under the ACCA and granted the defendant relief under the plain-error standard. *See id.* at 980-81. But on June 17, 2017, the Eighth Circuit granted en banc review and vacated its prior decision in *Swopes*.

21

victim, knocking him against a railing. *See id.* at 402-03. This case also clearly describes violent force as described in *Johnson I*.

We acknowledge language in the New Mexico cases suggesting any quantum of force which overcomes resistance would be sufficient to support a robbery conviction. But what is said is less important than what is done. As we have seen, New Mexico's appellate courts do not apply this standard blindly. Defendants who have used a minimal level of physical force to take a victim's property have seen their convictions reversed. *See Sanchez* and *Curley*. We are concerned with realistic probabilities, not theoretical possibilities, of conviction under the statute. *Harris*, 844 F.3d at 1264. And the cases affirming convictions which clearly discuss the quantum of force describe force sufficient to satisfy the *Johnson I* definition.

In sum, we conclude robbery as defined in N.M. Stat. Ann. § 30-16-2, authoritatively discussed in *Bernal*, and actually applied in the New Mexico courts, categorically matches the definition of "physical force" the Supreme Court assigned in *Johnson I*. Robbery under this statute has as an element the use or threatened use of physical force against another person. Thus, robbery under § 30-16-2 is a violent felony under the ACCA's Elements Clause in § 924(e)(2)(B)(i), and may be used as the third predicate violent felony conviction to uphold Garcia's enhanced sentence under the ACCA.

22

## III. CONCLUSION

We affirm the District judge's order denying Garcia's § 2255 motion.

Garcia's motion for an expedited decision is denied as moot.