FILED
United States Court of Appeals
Tenth Circuit

October 18, 2012

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JARROD DURAN,

Defendant-Appellant.

No. 11-1308

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 1:10-CR-00593-PAB-1)**

---

Howard A. Pincus, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, with him on the briefs) Office of the Federal Public Defender, Denver, Colorado, for Appellant.

May Kim, Special Assistant United States Attorney (John F. Walsh, United States Attorney, with her on the brief) Office of the United States Attorney, Denver, Colorado, for Appellee.

---

Before **MURPHY**, **HARTZ**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

Jarrod Duran challenges the procedural reasonableness of his forty-one-month sentence, claiming that his prior conviction for aggravated assault under

Texas law was not a crime of violence under the United States Sentencing Guidelines (USSG).  Because we agree that under Texas law aggravated assault can be committed with only a mens rea of recklessness, it is not categorically a crime of violence.

We therefore remand for resentencing.

# I.  Background

Duran pleaded guilty to one count of possession of a firearm by a convicted felon.  His plea arose from a police encounter in Trinidad, Colorado, where he was apprehended fleeing the scene of an attempted residential burglary.  The police were responding to a call by local residents who reported they had heard gunshots and breaking glass.  The police found two .40 caliber ammunition rounds in Duran's pocket and several spent rounds of the same type around the home.  Near this home they also found a Glock pistol still loaded with ammunition of the same type.  Duran tested positive for gunshot residue.

He was arrested for possession of a firearm by a convicted felon.  After pleading guilty and prior to sentencing, it was determined that Duran had a prior felony conviction for aggravated assault in Texas, for which he received an eight-year sentence.  For purposes of sentencing, he reserved the right to challenge whether this offense was a crime of violence, which might enhance his sentence under the Sentencing Guidelines.

At the sentencing hearing the district court found that aggravated assault was a crime of violence under the residual clause of the guideline, which encompasses any crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." USSG § 4B1.2(a). The district court reasoned that the conduct involved in an aggravated assault—even if recklessly done—generally involves serious potential risk of physical injury and was sufficiently similar to typical crimes of violence such as burglary and arson.

But between the time of the sentencing hearing and this appeal we have held that a crime of violence cannot fall under the residual clause unless it is an intentional crime—criminal recklessness is insufficient. *United States v. Armijo*, 651 F.3d 1226, 1237 (10th Cir. 2011). The district court did not have the benefit of *Armijo* in considering whether Texas law did or did not allow for a mens rea of recklessness. We thus must answer that question in this appeal.

## II. Analysis

Whether a statute defines a "crime of violence" for purposes of USSG § 4B1.2 is a question of statutory construction, which we review de novo. *United States v. Riggans*, 254 F.3d 1200, 1203 (10th Cir. 2001).

## A. Evaluating Crimes of Violence

Under the Sentencing Guidelines, the term "crime of violence" means "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that"—

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

USSG § 4B1.2(a). The application notes to § 4B1.2(a) further provide that the term "crime of violence" includes:

> murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.

*Id*. § 4B1.2 cmt. n.1.

"In determining whether a particular felony offense constitutes a crime of violence within the meaning of § 4B1.2, we employ a 'categorical' approach that omits consideration of the particular facts of the case." *United States v. Vigil*, 334 F.3d 1215, 1218 (10th Cir. 2003). Under the "categorical approach we consider the offense generically, that is to say, we examine it in terms of how the

-4-

law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *United States v. Rooks*, 556 F.3d 1145, 1147 (10th Cir. 2009) (quotation omitted).

Applying this approach "[i]f the criminal statute setting out the predicate felony is ambiguous, or broad enough to encompass both violent and nonviolent crimes, we employ the so-called 'modified categorical approach' which allows analysis of certain records of the prior proceeding, such as the charging documents, the judgment, any plea thereto, and findings by the sentencing court." *Armijo*, 651 F.3d at 1230 (quotation omitted). This review "does not involve a subjective inquiry into the facts of the case, but rather its purpose is to determine which part of the statute was charged against the defendant and, thus, which portion of the statute to examine on its face." *United States v. Charles*, 576 F.3d 1060, 1067 (10th Cir. 2009) (quotation omitted).

In this case we apply the modified categorical approach because Texas law broadly defines aggravated assault to situations that might involve nonviolent or reckless acts.

### B. Texas Law

#### 1. Aggravated Assault

Duran's prior conviction was for aggravated assault. Under Texas law, a person commits aggravated assault if the assault:

-5-

(1) causes serious bodily injury to another, including the person's spouse; or

(2) uses or exhibits a deadly weapon during the commission of the assault.

*Id.* § 22.02(a). As part of the elements of aggravated assault, the statute incorporates the elements of simple assault, which commands:

(a) A person commits an offense [of simple assault] if the person:

(1) intentionally, knowingly, *or recklessly* causes bodily injury to another, including the person's spouse;

Tex. Penal Code § 22.01(a)(1) (emphasis added).

Duran was charged under the aggravated assault provision. The record includes the instructions given to Duran's Texas jury on the elements of the crime of aggravated assault:

Our law provides that a person commits an assault if (1) the person intentionally or knowingly or recklessly causes bodily injury to another or (2) intentionally or knowingly threatens another with imminent bodily injury. Such assault is aggravated assault when the actor uses or exhibits a deadly weapon during the commission of the assault.

R., Vol. I at 52. Based on this instruction, Duran was convicted of "intentionally or knowingly or recklessly caus[ing] bodily injury to another." Tex. Penal Code § 22.01(a)(1). By the plain meaning of the statute and the jury instruction, the offense of conviction admits to three distinct possibilities for satisfying the mens rea requirement—intentionally, knowingly, or recklessly.

### 2. *Purposeful Conduct and Mens Rea*

We have "unequivocally held that the text of § 4B1.2 only reaches purposeful or intentional behavior." *Armijo*, 651 F.3d at 1236. "[I]n interpreting the language of, or language identical to that used in § 4B1.2(a), this court has specifically held that only those crimes with a mens rea of intent or purpose qualify as crimes of violence." *Id.* at 1234. This is true even for § 4B1.2's residual clause or when the prior felony comes within the list of crimes enumerated in § 4B1.2's application notes, which includes both manslaughter (at issue in *Armijo*) and aggravated assault, the crime committed by Duran. *Id.* at 1234–35.[1] The sentencing enhancement for a prior felony crime of violence may therefore only apply to Duran if the mens rea for his conviction required intentional conduct, not recklessness. We turn to that inquiry next.

In a prior case construing Texas law, we applied this principle to simple assault and found that a violation of Texas Penal Code § 22.01(a)(1) is not a "crime of violence" because it allows for a mens rea of recklessness. *United States v. Zuniga-Soto*, 527 F.3d 1110, 1117 (10th Cir. 2008) (construing language

---

[1] Some cases have questioned whether our decision in *Armijo*, applying *Sykes v. United States*, 131 S. Ct. 2267 (2011), is entirely consistent with the Court's earlier precedent, *Begay v. United States*, 553 U.S. 137 (2008), or if *Begay* is still good law. *United States v. Sandoval*, No. 11-1303, 2012 WL 4784466 (10th Cir. Oct. 9. 2012). If *Begay* still applies to crimes "akin to strict liability, negligence, and recklessness," *Sykes*, 131 S. Ct. at 2276, it is possible that at least some crimes with a recklessness element might be crimes of violence. But *Armijo* seems to foreclose this inquiry in our circuit.

in USSG § 2L1.2, identical to the first of the two alternate definitions of crime of violence set out in § 4B1.2(a)).

Only one difference can be discerned between simple assault under Texas law, which we have found is not a crime of violence, *id.*, and aggravated assault: the use or exhibition of a deadly weapon.

The government argues this difference is crucial. It contends this case can be distinguished from *Armijo* and *Zuniga-Soto* because the element of using a deadly weapon requires a level of mens rea beyond recklessness. There is some force to this argument, but we find it foreclosed by Texas case law—Texas courts have held that each of the elements of aggravated assault may be committed recklessly.

"[T]he elements of aggravated assault are 1) the defendant 2) intentionally, knowingly, or recklessly 3) caused bodily injury to another and 4) used a deadly weapon." *Butler v. State*, 928 S.W.2d 286, 288 (Tex. App. 1996). "It is clear from the statutory definition of aggravated assault that the culpable mental states of intent, knowledge, and recklessness relate to the assault element of causing bodily injury to another," and "a second culpable mental state is not required to be included with the deadly weapon element." *Id.* Thus, under this authority one can recklessly "use or exhibit" a deadly weapon.

The government argues that, *Butler* notwithstanding, Texas law in fact requires a heightened mental state for the use of a deadly weapon. The

government supports this argument by pointing to *Patterson v. State*, 769 S.W.2d 938 (Tex. Crim. App. 1989) (en banc), for the proposition that the use and exhibition of a deadly weapon during the commission of an offense necessarily involves intentional, purposeful conduct.  The defendant in *Patterson* was convicted of possession of methamphetamine with intent to distribute.  The defendant had a gun on him at the time of arrest, but never exhibited it or took it out of its hiding place.  The question was whether the jury properly found that he had "used" a deadly weapon during the commission of his drug offense, a finding that made him ineligible for probation.

To answer this question, the court in *Patterson* relied on a dictionary definition which implies deliberate purpose:  "'[U]se' is defined as 'to put into action or service: have recourse to or enjoyment of: employ ... to carry out a purpose or action by means of: make instrumental to an end or process: apply to advantage: turn to account: utilize.'" *Id.* at 940–41 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2253-24 (1976)).  The defendant argued that the gun's purpose, if any, was to protect his cash.  *Id.* at 940.  The court held that this was sufficient: "'[U]sed ... a deadly weapon' during the commission of the offense means that the deadly weapon was employed or utilized in order to achieve its purpose." *Id*. at 941.  The government argues that if a defendant only "uses" a deadly weapon when he employs it "to carry out a purpose," then the use of a deadly weapon necessarily implies true intent rather than mere recklessness.

But *Patterson* addressed nothing about the mens rea requirement when a weapon is used as part of an assault. As explained in a subsequent Texas case, "possession of a weapon to facilitate a felony, as in *Patterson*, constitutes the use of that weapon, whereas mere possession of the weapon without putting it to any use or purpose whatsoever does not." *Tyra v. State*, 897 S.W.2d 796, 798 (Tex. Crim. App. 1995). For aggravated assault, the defendant must do something with a deadly weapon that, in fact, causes serious bodily injury to the victim, and under Texas law that can be done recklessly.

Texas courts have thus rejected the argument that under *Patterson* there cannot be a conviction for any crime that involves the use of a deadly weapon "unless the evidence supports a conclusion that the accused actually intended to use an object in such a way as to cause" the harm that might otherwise have occurred through recklessness. *Id.* at 797. *Tyra* held that purely reckless crimes can still involve the use of a deadly weapon:

> When the word 'use' is understood in either of these senses, according to the rules of grammar and usage as *Patterson* counsels, and the term 'deadly weapon' is understood as defined by the Legislature, it is reasonably clear that driving an automobile constitutes the use of it and that driving it in a manner capable of causing death or serious bodily injury constitutes it a deadly weapon.

*Id.* at 798. Under Texas law, driving a car recklessly can constitute the use of a deadly weapon.

It is thus clearly possible to commit a crime that involves the use of a deadly weapon under Texas law without committing a crime of violence under federal law. Manslaughter through reckless driving, the offense considered in *Tyra*, would not be a crime of violence, given that neither manslaughter nor reckless driving on its own is a crime of violence. *Armijo*, 651 F.3d at 1237; *Begay v. United States*, 553 U.S. 137 (2008). The same logic applies to recklessly using a firearm. As the court in *Tyra* said, "Had the appellant in this case recklessly caused the death of another by carelessly discharging a firearm in his direction, it is unlikely there would be much dispute about his use of a deadly weapon." 897 S.W.2d at 798.

There are other examples of situations where a defendant could commit Texas aggravated assault without committing a crime of violence. The district court suggested a hunting accident might be aggravated assault under Texas law—not the type of "purposeful, violent, and aggressive" conduct covered by the "crime of violence" provisions. *Begay*, 553 U.S. at 145. And when discussing a similar Colorado statute, we suggested that a defendant could "knowingly or recklessly [cause] bodily injury to another person or with criminal negligence [cause] bodily injury to another person by means of a deadly weapon" without committing a crime of violence under USSG § 2L1.2 (a provision similar to the one at issue here) by "recklessly shooting a gun in the air to celebrate." *United States v. Perez-Vargas*, 414 F.3d 1282, 1286 (10th Cir. 2005).

In sum, aggravated assault under Texas law could be committed with a reckless state of mind.  Our case law therefore forecloses it from categorically qualifying as a crime of violence.

# III. Conclusion

Because a defendant can commit aggravated assault under Texas law with a mens rea no higher than recklessness, this crime is not categorically a crime of violence under USSG § 4B1.2(a) and the sentencing enhancement does not apply. We therefore remand to the district court for resentencing.