**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 12, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee/Cross-
     Appellant,

v.

DUSTIN E. ASH,

     Defendant - Appellant/Cross-
     Appellee.

Nos. 17-3223 & 17-3245

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:15-CR-20054-CM-1)**
_____

Daniel T. Hansmeier (Melody Brannon, with him on the briefs), Kansas Federal Public
Defender, Kansas City, Kansas, for Defendant - Appellant/Cross-Appellee.

James A. Brown (Stephen R. McAllister, with him on briefs), United States Attorney's
Office, Topeka, Kansas, for Plaintiff - Appellee/Cross-Appellant.
_____

Before **TYMKOVICH**, Chief Judge, **LUCERO** and **MATHESON**, Circuit Judges.
_____

**LUCERO**, Circuit Judge.
_____

     In this cross-appeal, the parties challenge two district court rulings that

considered whether certain offenses are crimes of violence under U.S.S.G.

§ 4B1.2(a). Intervening authority resolves both challenges. First, the Supreme Court recently determined that robbery qualifies as a crime of violence if the offense requires the perpetrator to overcome victim resistance. Stokeling v. United States, 139 S. Ct. 544, 549 (2019). We thus hold that Dustin Ash's Missouri conviction for second-degree robbery is a crime of violence. Second, our court recently reversed its prior precedent and rejected Ash's argument that offenses with a mens rea of recklessness cannot qualify as crimes of violence. United States v. Bettcher, 911 F.3d 1040, 1046 (10th Cir. 2018). We accordingly conclude that Ash's Kansas conviction for reckless aggravated battery is a crime of violence. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we reverse in part, affirm in part, and remand for resentencing.

**I**

Ash pled guilty to two counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). His Presentence Investigation Report ("PSR") identified a 2012 Kansas conviction for reckless aggravated battery as a "crime of violence" under U.S.S.G. § 4B1.2(a). Concluding that Ash had one such prior conviction, the PSR set his base offense level at 20 pursuant to § 2K2.1(a)(4)(A). After making several adjustments, the PSR indicated Ash's total offense level was 23.[1] Paired with a criminal history category of V, the PSR determined his Guidelines range was 84 to 105 months' imprisonment.

---

[1] The PSR imposed a two-level adjustment because one of the firearms was stolen, § 2K2.1(b)(4)(A), and a four-level adjustment because Ash possessed the

2

Both parties objected to the PSR. Ash contended the Kansas statute under which he was convicted does not categorically satisfy the definition of "crime of violence" because it can be committed with a mens rea of recklessness. He thus argued his base offense level should have been 14 under § 2K2.1(a)(6). The government countered that Ash had at least two prior convictions for crimes of violence: his Kansas conviction (already included in the PSR), and a 2001 Missouri conviction for second-degree robbery.[2] It argued Ash's base offense level should have been 24 pursuant to § 2K2.1(a)(2).

The district court overruled both objections. It determined Ash's Kansas reckless aggravated battery conviction qualifies as a crime of violence, but his Missouri second-degree robbery conviction does not. The court agreed with the PSR that the appropriate advisory Guidelines range was 84 to 105 months. It imposed a 94-month sentence. Ash appeals the district court's ruling as to the Kansas offense. The government cross-appeals as to the Missouri offense.

## II

"Our review of whether a defendant's prior conviction constitutes a crime of violence under U.S.S.G. § 4B1.2 is de novo." United States v. Wray, 776 F.3d 1182, 1184 (10th Cir. 2015). That provision defines "crime of violence" in part as "any

firearms in connection with other felony offenses, § 2K2.1(b)(6)(B). Ash received a three-level reduction for acceptance of responsibility. § 3E1.1.

[2] The government also argued a 1999 Kansas attempted robbery conviction qualified, but does not appeal the district court's determination that this offense is not a crime of violence.

offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another." § 4B1.2(a)(1). We refer to this portion of the definition as the "elements clause." United States v. Taylor, 843 F.3d 1215, 1220 (10th Cir. 2016).

Our inquiry under the elements clause demands application of "the categorical approach, examining the elements of the [state] statute to see whether they meet the requirements of U.S.S.G. § 4B1.2(a)(1)'s crime of violence definition." Bettcher, 911 F.3d at 1043. To determine if an offense satisfies "the elements clause's 'physical force' component . . . we must identify the minimum 'force' required by [state law] law for the crime of [conviction] and then determine if that force categorically fits the definition of physical force." United States v. Harris, 844 F.3d 1260, 1264 (10th Cir. 2017) (emphasis omitted).[3]

"Federal law defines the meaning of the phrase 'use, attempted use, or threatened use of physical force.'" Harris, Id. In analyzing an identically worded elements clause contained in 18 U.S.C. § 16, the Supreme Court held that the word "'use' requires active employment" rather "than negligent or accidental conduct." Leocal v. Ashcroft, 543 U.S. 1, 9 (2004). The modifier "physical" limits the

---

[3] In Harris, we considered whether a crime qualified as a violent felony under the elements clause of the Armed Career Criminal Act ("ACCA"). Id. Because the "definition set forth in the career-offender guideline, § 4B1.2, is virtually identical to the definition of violent felony contained in" ACCA, we have applied the "violent felony analysis in cases interpreting § 4B1.2's definition of crime of violence." Wray, 776 F.3d at 1184-85 (quotation omitted).

4

elements clause to "force exerted by and through concrete bodies" as opposed to, "for example, intellectual or emotional force." Johnson v. United States, 559 U.S. 133, 138 (2010). And "physical force" means "violent force—that is, force capable of causing physical pain or injury to another person." Id. at 140 (emphasis omitted).

We look to state law to define "the substantive elements of the crime of conviction." Harris, 844 F.3d at 1264. In identifying the "minimum force" required for the crime of conviction, such "minimum culpable conduct . . . only includes that in which there is a realistic probability, not a theoretical possibility the state statute would apply." Id. (quotations omitted). "Decisions from the state supreme court best indicate a realistic probability, supplemented by decisions from the intermediate-appellate courts." Id. (quotation omitted).

## A

The government argues Ash's 2001 Missouri conviction for second-degree robbery qualifies as a crime of violence. The Missouri statute under which Ash was convicted provided, at the time of his offense, that "[a] person commits the crime of robbery in the second degree when he forcibly steals property." Mo. Rev. Stat. § 569.030 (1998). The term "forcibly steals" means that a person:

uses or threatens the immediate use of physical force upon another person for the purpose of:

(a) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or

(b) Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft.

5

Mo. Rev. Stat. § 569.010(1) (1998).[4]

The Supreme Court's recent decision in Stokeling dictates that this offense is categorically a crime of violence under the elements clause. In Stokeling, the Court determined ACCA's "elements clause encompasses robbery offenses that require the criminal to overcome the victim's resistance." 139 S. Ct. at 550. Although it had previously defined "force" for the purpose of the same clause as "violent force—that is, force capable of causing physical pain or injury to another person," Johnson, 559 U.S. at 140 (emphasis omitted), the Court clarified that "Johnson did not purport to establish a force threshold so high as to exclude even robbery from ACCA's scope," Stokeling, 139 S. Ct. at 553. It reasoned that "the force necessary to overcome a victim's physical resistance is inherently violent in the sense contemplated by Johnson, and suggests a degree of power that would not be satisfied by the merest touching." Id. (quotations and alteration omitted).

To reach this conclusion, the Court held that the term "force" is informed by its common law definition, and specifically "that the 'force' required for common-law robbery" was enough to satisfy the elements clause's use of force requirement. Id. at 551. At common law, force used to overcome victim resistance was sufficient, "however slight the resistance." Id. (quotation omitted). Thus, "it was robbery to seize another's watch or purse, and use sufficient force to break a chain or guard by

_____

[4] The Missouri statutes were amended effective January 1, 2017. See L.2014 S.B. No. 491.

which it is attached to his person, or to run against another, or rudely push him about, for the purpose of diverting his attention and robbing him." Id. at 550 (quotation omitted). "[R]obbery that must overpower a victim's will—even a feeble or weak-willed victim—necessarily involves a physical confrontation and struggle." Id. at 553. And "it is the physical contest between the criminal and the victim that is itself capable of causing physical pain or injury." Id. (quotation omitted). The Court accordingly determined Florida robbery, which can be completed by "a defendant who grabs the victim's fingers and peels them back to steal money," is a violent felony. Id. at 555.

Nevertheless, not all physical contact establishes the quantum of force required by Johnson, as clarified in Stokeling. The Supreme Court stated in Johnson that the "merest touch" is insufficient to constitute force. 559 U.S. at 143; see also United States v. Garcia, 877 F.3d 944, 952 (10th Cir. 2017) (noting that "mere touching is insufficient to satisfy the violent force standard" (quotation omitted)). The Court emphasized in Stokeling that under the Florida law at issue, "[m]ere snatching of property from another will not suffice," and force is not used simply because "the victim feels [the assailant's] fingers on the back of her neck." 139 S. Ct. at 555 (quotations and alteration omitted). This court recently applied Stokeling to a Kansas robbery statute, holding that it did not qualify as a crime of violence under the elements clause because a defendant can be convicted for snatching property "without any application of force directly to the victim, and also, importantly, without any resistance by or injury to the victim." United States v. Bong, 913 F.3d

7

1252, 1264 (10th Cir. 2019).  The line is drawn, therefore, between robbery that can be accomplished by the mere snatching of property and robbery that requires overcoming even slight victim resistance.[5]

The Missouri robbery statute under which Ash was convicted falls on the crime of violence side of that divide.  Its plain text, which requires that an assailant "uses or threatens the immediate use of physical force upon another person," § 569.010(1), corresponds almost exactly to the Guidelines' requirement that a crime of violence have "as an element the use, attempted use, or threatened use of physical force against the person of another," § 4B1.2(a)(1).  However, we must look to Missouri caselaw to determine whether the statute requires a showing that the defendant overcame the victim's resistance, and therefore satisfies the standard set out in Stokeling.  See Bong, 913 F.3d at 1262, 1264 (holding Kansas robbery statute that facially required use of "force" did not qualify as a violent felony because state caselaw permitted conviction without application of force to victim or overcoming resistance).

---

[5] In Garcia, we arguably applied a different standard.  There, we noted that "some federal circuit courts have decided a robbery statute which criminalizes the use of any physical force, however minimal, to overcome the victim's resistance and seize her property . . . does not meet the violent force" requirement.  877 F.3d at 950. We also questioned whether a New Mexico statute qualified as a violent felony given "language in the New Mexico cases suggesting any quantum of force which overcomes resistance would be sufficient to support a robbery conviction."  Id. at 956.  To the extent Garcia does not comport with the rule set out in Stokeling, it is no longer good law.  See United States v. Myers, 200 F.3d 715, 720 (10th Cir. 2000) (noting panel precedent must give way to "a superseding contrary decision by the Supreme Court").

Several older Missouri Supreme Court cases distinguish snatching of property from takings that involve overcoming victim resistance. In State v. Adams, 406 S.W.2d 608 (Mo. 1966), that court concluded that

> snatching a valuable article from another is robbery where force is exercised in overcoming the resistance of the person robbed or in detaching the article taken where it is fastened to the clothing or person of the victim, but that where the article is merely snatched from the hand of another the offense is stealing and not robbery.

Id. at 611; see also State v. Houston, 451 S.W.2d 37, 39 (Mo. 1970) (noting "there was actual violence in excess of mere snatching"); State v. White, 34 S.W.2d 79 (Mo. 1930) ("The mere snatching of an article from the person of another, without violence or putting in fear, is not robbery, except where there is some injury or violence to the person of the owner or where the property snatched is so attached to the person or clothes of the owner as to afford resistance." (quotation omitted)); State v. Spivey, 204 S.W. 259, 261 (Mo. 1918) ("Snatching a valuable article from another is always denominated robbery where any force is exercised either to overcome the resistance of the person robbed or in detaching the article taken where it is fastened in some way to the clothing or person of the one robbed.").[6]

---

[6] The version of the robbery statute under which Ash was convicted became effective in 1979. See L.1977, S.B. No. 60. Prior versions of the statute differed in some important respects from the version we consider in this case. See State v. Tivis, 884 S.W.2d 28, 30 (Mo. Ct. App. 1994) (noting that prior robbery statutes "provided that putting a person in fear of some immediate injury was sufficient" rather than "the use or threatened use of immediate physical force"). But as described infra, Missouri case law as to the quantum of force necessary has been carried forward.

In more recent cases, the Missouri Court of Appeals has reversed robbery convictions in cases in which the defendant did not overcome victim resistance. In State v. Henderson, 310 S.W.3d 307 (Mo. Ct. App. 2010), that court determined there was insufficient force to sustain a second-degree robbery conviction because the evidence showed defendant only "brushed" a store clerk's arm in taking money from her cash register, but did not "hit, grab, pull, or use any force against her" and "the clerk did not resist." Id. at 308. This "contact incidental to the money snatch," the court held, was "not a threat or use of force to overcome resistance." Id. at 309. Similarly, in Tivis, the Missouri Court of Appeals overturned a robbery conviction because defendant merely "grabbed the [victim's] purse by its strap, took it from her shoulder and ran off," but "there was no struggle over the purse, [the defendant] did not touch her and she was not injured." 884 S.W.2d at 29-30.

On the other hand, Missouri courts have upheld robbery convictions in cases in which force was used to overcome victim resistance. In several cases, evidence of a struggle was deemed sufficient. For example, in State v. Childs, 257 S.W. 3d 655 (Mo. Ct. App. 2008), the defendant "tussled" with the victim for her car keys. Id. at 660. The court explained that "[t]he sudden taking or snatching of property is not sufficient to support a second-degree robbery conviction," but "evidence that the defendant struggled with or caused an injury to the victim" is enough. Id. Similarly, in State v. Jolly, 820 S.W.2d 734 (Mo Ct. App. 1991), defendant's second-degree robbery conviction was affirmed because he "grabbed" the victim's bag and "[i]n the ensuing struggle, [the victim's] fingernail was ripped off." Id. at 735. The court

10

explained that this evidence was sufficient to sustain a second-degree robbery conviction because it "was no mere purse-snatching; appellant and [the victim] struggled over the bag." Id. at 736; see also Hughes v. State, 204 S.W.3d 376, 381 (Mo. Ct. App. 2006) (defendant committed second-degree robbery because he "struggled with [store employees] while trying to escape with the stolen drugs").

Missouri courts have also determined that taking property securely attached to a person is sufficient for a second-degree robbery conviction. In State v. Butler, 719 S.W. 2d 35 (Mo. Ct. App. 1986), the victim's purse strap was "wrapped around [her] arm and one of her fingers" and her finger was mildly injured when defendant pulled it from her. Id. at 35. Citing to Adams, the court ruled that the quantum of force necessary for second-degree robbery is satisfied if "the article snatched is so attached to the owner's person as to afford resistance or injure the possessor in the taking." Id. (quotation and emphasis omitted). And in State v. Rice, 937 S.W. 2d 296 (Mo. Ct. App. 1996), defendant "jerked" a purse from the victim's shoulder, causing her pain and breaking the strap. Id. at 298. The court again held that an article can "be so attached to the owner's person as to afford resistance or cause injury in the taking." Id.

This degree of force is consistent with that required by Stokeling. As the Supreme Court noted in that case, common law robbery included instances in which the defendant "physically overcame a victim's resistance, however slight," as well as crimes in which the defendant "seize[d] another's watch or purse, and use[d] sufficient force to break a chain or guard by which it [was] attached to his person."

11

Stokeling, 139 S. Ct. at 550 (quotations omitted). "Similarly, it was robbery to pull a diamond pin out of a woman's hair when doing so tore away hair attached to the pin. But the crime was larceny, not robbery, if the thief did not have to overcome such resistance." Id. (citation omitted). And "the 'force' required for common-law robbery [is] sufficient to justify an enhanced sentence under the . . . elements clause." Id. at 551.

Ash cites to language in State v. Lewis, 466 S.W.3d 629 (Mo. Ct. App. 2015), arguing that case establishes second-degree robbery can be committed with less force than necessary to overcome victim resistance. In summarizing caselaw on the force necessary to commit second-degree robbery, the Lewis court stated that "where there was no physical contact, no struggle, and no injury, courts have found the evidence insufficient to support a robbery conviction. But where one or more of those circumstances is present, a jury reasonably could find use of force." Id. at 632. Ash thus argues that any type of physical contact, even mere touching, is enough under the statute to sustain a second-degree robbery conviction. But this language from Lewis is dicta. In that case, the defendant bumped the victim, yanked her purse away from her, and engaged in a "slight struggle." Id. at 631. The Lewis court recognized that "de minimus contact" would not be enough. Id. at 633. For that proposition, the court cited Henderson, which as noted above determined "contact incidental to [a] snatch" is insufficient to support a second-degree robbery conviction. 310 S.W.3d at 309.

12

Prior to the Supreme Court's decision in <u>Stokeling</u>, the Eighth Circuit, sitting en banc, reached the conclusion that Missouri second-degree robbery requires the use of force and cannot be committed by incidental contact. In <u>United States v. Swopes</u>, 886 F.3d 668 (8th Cir. 2018) (en banc), that court noted the dicta quoted above, but explained "[t]he offense in <u>Lewis</u> itself . . . <u>did</u> involve the use of violent force: The court upheld Lewis's second-degree robbery conviction when he bumped the victim from behind, momentarily struggled with her, and then yanked the purse out of her hands." <u>Id.</u> at 671 (quotation omitted). We agree with the Eighth Circuit that "[t]he text of the Missouri second-degree robbery statute at issue here requires proof that a defendant used physical force or threatened the immediate use of physical force" and that Missouri courts have applied that requirement in a manner consistent with the meaning of "physical force" as used in the elements clause. <u>Id.</u> at 672. We accordingly conclude that Ash's Missouri second-degree robbery conviction is categorically a crime of violence under § 4B1.2(a)(1).[7]

---

[7] In a Fed. R. App. P. 28(j) letter following <u>Stokeling</u>, Ash argues that Missouri robbery does not correspond perfectly to common law robbery because it permits a conviction if the defendant "uses or threatens the immediate use of physical force upon another person for the purpose of . . . [c]ompelling the owner . . . or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft." § 569.010(1). But Missouri robbery need not mirror common law robbery exactly to satisfy the elements clause. It need only require the same quantum of force. We cannot discern a reasonable scenario in which a defendant might use an amount of force less than that necessary to overcome slight victim resistance in order to compel a person to deliver up property or engage in other conduct which aids in the commission of the theft.

## B

Ash argues the district court erred in treating his Kansas reckless aggravated battery conviction as a crime of violence. He was convicted of "recklessly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." Kan. Stat. § 21-3414(a)(2)(B) (repealed July 1, 2011).[8]

As noted above, the Supreme Court has held that the "use" of physical force does not include "negligent or accidental conduct." Leocal, 543 U.S. at 9. We previously interpreted this rule as excluding offenses with a mens rea of recklessness from the definition of crime of violence. See United States v. Duran, 696 F.3d 1089, 1095 (10th Cir. 2012) (interpreting § 4B1.2(a)(1)); see also United States v. Zuniga-Soto, 527 F.3d 1110, 1124 (10th Cir. 2008) (reaching the same conclusion under U.S.S.G. § 2L1.2, which contains an identical elements clause). However, our circuit has now recognized this line of cases has been overruled by intervening Supreme Court authority. Bettcher, 911 F.3d at 1045-46.[9]

Following Duran and Zuniga-Soto, the Supreme Court determined that reckless domestic violence crimes categorically include the use of physical force

---

[8] We assume without deciding, consistent with the parties' positions, that the Kansas statute at issue is divisible and thus the modified categorical approach applies. See Mathis v. United States, 136 S. Ct. 2243, 2248-49 (2016). We accordingly look to the elements of the particular subsection of the statute under which Ash was convicted.

[9] Bettcher had not been decided when we heard oral argument in this case.

within the meaning of 18 U.S.C. § 921(a)(33)(A)(ii). Voisine v. United States, 136 S.Ct. 2272, 2276 (2016). It explained that "the word 'use' does not demand that the person applying force have the purpose or practical certainty that it will cause harm, as compared with the understanding that it is substantially likely to do so" because "that word is indifferent as to whether the actor has the mental state of intention, knowledge, or recklessness." Id. at 2279.

This court in Bettcher held that Voisine "overrides our contrary precedents classifying reckless harm with negligent or accidental harm." 911 F.3d 1045. We concluded that "after Voisine, the law is sufficiently plain that reckless [crimes] qualify as crimes of violence under U.S.S.G. § 4B1.2(a)(1)." Id. at 1047. Accordingly, we must reject Ash's argument that his Kansas conviction does not qualify as a crime of violence because it can be committed recklessly.[10] The Kansas reckless aggravated battery statute under which Ash was convicted is a crime of violence pursuant to § 4B1.2(a)(1).[11]

---

[10] In his opening brief, Ash also argued that the Kansas statute does not involve the use of physical force because the crime can be committed through mere offensive touching. But in his reply brief, he concedes that this argument fails under the applicable plain error standard of review based on existing circuit precedent. See United States v. Williams, 893 F.3d 696, 704 (10th Cir. 2018) (holding that analogous subsection of the Kansas aggravated battery statute with a mens rea of knowing qualifies as a crime of violence because "the causation of bodily harm . . . requires the use or threatened use of physical force").

[11] We therefore decline to decide whether it is also a crime of violence under § 4B1.2(a)(2).

15

**III**

For the foregoing reasons, we **AFFIRM** in part and **REVERSE** in part. Because Ash has two prior convictions for crimes of violence under the Guidelines, the district court miscalculated his advisory Guidelines range. We **REMAND** and instruct the district court to vacate Ash's sentence and resentence him consistent with this opinion.